VICTORIA, The (FRENCH v.). See Case No. 5,106.

VICTORIA. The (SAUNDERS v.). See Case No. 12,377.

VICTORIA. The (THORNE v.). See Case No. 13,988.

VICTORIA PEREZ, The (UNITED STATES v.). See Case No. 16,620.

---

## Case No. 16,937.

### The VICTORY.

[Blatchf. & H. 443.] [1]

District Court, S. D. New York. Dec. 3, 1834.

COSTS IN ADMIRALTY—SUIT FOR WAGES—SETTLEMENT OUT OF COURT—SET-OFF.

1. In a suit brought by a seaman for wages, a court of admiralty will not allow an out-door settlement, without the concurrence or knowledge of the libellant's proctor, to bar his claim for costs.

[Cited in Peterson v. Watson, Case No. 11,037; The Ontonagon, 19 Fed. 800.]

2. The action may be pursued after such settlement, for the purpose of determining the right to costs; and the court will, to that end, inquire into the fairness of the settlement with the seaman.

3. Costs unnecessarily created by side issues on that investigation, will be decreed against the libellant, and may be set off against those allowed him upon the main issue.

4. Where, in a suit in rem for wages, an answer to the libel on the merits was filed, and issue was joined, and afterwards a supplemental answer was filed, alleging a settlement, to which the libellant replied, alleging fraud in the settlement, and noticed the cause for hearing upon that issue, and it appeared that there was a good cause of action for more than the amount paid on the settlement, the costs upon the main issue were

[1] [Reprinted from 5 Reporter, 518, by permission.]

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland Esq.]

decreed to the libellant, and the claimant was allowed to set off the costs created by the new issue.

This was a libel in rem, in which the master intervened, as claimant. The libel demanded a balance of wages, amounting to $190, due for an outward and homeward voyage of fourteen months continuance. The libellant alleged, that he shipped on a voyage from New-York to Marseilles, and thence back to a port of the United States, but that the vessel went from Marseilles to Tarrogona, in Spain, thence to Gibraltar, thence to Rio Janeiro, thence to Monte Video, and thence to Boston; that he was forced to leave the vessel at Rio Janeiro, by the cruel usage of the chief mate; and that the voyage was changed to South America without his knowledge or consent. The master alleged, in his answer, that the libellant shipped for the voyage actually performed; that, from his insubordinate and dangerous conduct on board the vessel, the claimant had determined to discharge him at Rio Janeiro, to which the libellant assented; that previous to such discharge, in a controversy between him and the first mate, during the absence of the master on shore, the libellant attacked the mate with a drawn knife, and, to avoid being arrested for his mutinous conduct, jumped overboard and swam ashore; that the American consul at Rio Janeiro, on hearing the libellant and the claimant, endorsed on the roll of the crew his consent that the libellant be discharged from the vessel; and that he was accordingly discharged. This answer was filed in the latter part of August, 1834, and the case was set down for hearing at the September term, proofs having been taken on the part of the libellant. Some misapprehension having arisen at the hearing, between the counsel, as to the effect and operation of a stipulation admitting certain evidence of the first mate, the claimant moved to have the cause put off, and, on the 13th of September, obtained an order for commissions to examine witnesses out of the country, and for a stay of proceedings for six months. On the 3d of October, the claimant filed a supplemental answer by way of plea puis darrein continuance, alleging a settlement of the matter with the libellant by paying him $50, and setting forth a release in full, by the libellant, of his demand, for the consideration of one dollar and divers good causes. On the 2d of November, the proctor for the libellant filed a replication to the supplemental answer, averring that the release was fraudulently obtained from the libellant without the knowledge and consent of his proctor, and without payment of the taxable costs due in the suit, and to defraud the officers of the court of their legal fees. On the same day, an order was entered by the court, at the instance of the proctor for the libellant, allowing the libellant to notice the cause for hearing upon the latter issue, notwithstanding the order staying the proceedings for six months to take testimony, and, thereupon, the cause was set down upon the calendar for hearing at the November term; but, as the judge was sitting in the circuit court at the time, there was no opportunity to bring it on. On the 6th of November, the proctor for the libellant gave the proctor for the claimant notice in writing, that the cause was continued in prosecution to recover the taxable costs unpaid therein, and that, on payment thereof, the suit would be discontinued. At the December term, the cause came on to be heard, when it was insisted, for the libellant, that, notwithstanding the settlement out of court, the vessel should be held answerable for costs incurred to the time of the hearing, and for all which should subsequently accrue in enforcing their payment, while it was contended, on the part of the claimant, that costs were merely an incident to the suit or cause of action and fell of course when the latter was disposed of.

Erastus C. Benedict, for libellant.
David D. Field, for claimant.

BETTS, District Judge. In the case of The Sarah Jane [Case No. 12,348], this court decided that an out-door settlement of a cause with a seaman prosecuting for the recovery of wages, would not be allowed, as of course, to debar the libellant's proctor from the recovery of costs; and that, when the right to recover the debt and costs was manifest, the court would regard such settlement as a fraud on the seaman and on the officers of the court, in respect to their costs, and would retain possession of the thing against which the suit was proceeding, until the taxable costs were satisfied. That decision did not assume a power in the court to deny to seamen, in common with other suitors, the right of compromising their law suits, for arrangements of this kind made in that case were allowed to stand in full force; but it proceeded upon the broad doctrine, that the court is bound to exercise a supervisory authority over agreements of that character entered into with seamen personally, and to see that no injustice or wrong is done them. There can, however, be no doubt, upon general principles, that a court of admiralty will retain a suit, to pass upon questions of costs, although the principal cause of action is adjusted and no other matter remains for decision. The doctrine may be applied to other proceedings in the court, as well as to actions by sailors for wages. It would follow, as a necessary incident to the course of procedure in rem, where the thing itself remains with the court until all the equities connected with the lien upon which it was attached are satisfied, and because, after a warrant is issued, the costs become, equally with the main demand, a portion of the lien. The court of admiralty will support a reasonable and fair offer of settlement made to a sailor before suit brought, by imposing costs on him if he refuses the offer

and sues for wages at large. And since, if the action is defended. it is to be carried on by the claimant or respondent without expectation of reimbursement from a common mariner, the court will be cautious not to construe an offer to settle, into an admission of the justice of the demand. It is rather regarded as an attempt to avoid an expensive litigation, by paying a specific amount to be free from it. Accordingly, if the matter is referred to the court, the precise sum offered is decreed. and without costs, when the proof does not show that the mariner must have recovered more had the suit progressed. The court acquaints itself with the fair rights of the seaman, and endeavors to give a liberal construction to offers of compromise with him. After a suit is in court, however, it is subject to the supervision of the proctors. In courts of civil law, according to the strict principles of practice, the parties themselves have no authority over the cause after their regular appearance by proctors. The proctor is regarded as dominus litis, having the management and control of all the proceedings, until a final decree, or until his authority is revoked. In actions by mariners especially, the promovents are regarded as essentially under tutelage. Every dealing with them personally by an adversary party, in respect to their suits, will be scrutinized by the court with great distrust. Lord Stowell declares, that negotiations with seamen, even before suit brought, are conducted more to the satisfaction of the court, when entrusted to their proctors; (The Frederick, 1 Hagg. Adm. 211, 220;) thus distinctly implying that the court may extend its quasi guardianship to their interests not in prosecution. And the authorities are clear to the point, that bargains to the disadvantage of seamen, in respect to their services and the wages due them, will not be regarded in admiralty courts, when unconscientious or overreaching in their bearing. There would be still greater reason, in a case presenting a clear ground for recovery, to withhold from them an unrestrained control over the rights of their proctors, which become blended with their own after suit instituted. Accordingly, the payment of a particular sum to a mariner out of court, without the knowledge of his proctor, to settle a suit for wages in progress and prepared for decision, if sanctioned as a settlement of the cause so far as a recovery of the matter in demand was concerned, would still be regarded by the court as evidence against a claimant or respondent, different from what an offer of the same sum to prevent a suit would be. Such a payment does not wear the face of only purchasing peace or buying off the hazards of a law suit. but it is bidding against the greediness and ignorance of the seaman. after the respondent or claimant is aware of the strength of the seaman's case and of the weakness of his own. Coming in that shape, it may well be acted upon as an acknowledgment that the seaman was justly entitled to the full amount paid.

The transaction bears another aspect. If not explained on the part of the master or owner, the court must consider a settlement so made to have been procured for the purpose of depriving the libellant's proctor of the legal costs accrued in the action. Those costs almost inevitably follow a recovery in a suit for wages. They, equally with the wages, are a lien on the vessel, from the moment she is attached. When the testimony before the court indicates to the master or owner that the seamen must have a decree in their favor, he will be deemed, in procuring a settlement and release, to have employed the temptation of cash in hand, to influence needy and reckless parties to desert their suit and fraudulently throw the costs upon their own proctor.

At law, where costs are incident to the success of the suitor's claim or defence, and accordingly depend upon the final event of the litigation, a settlement between the parties is ordinarily held to extinguish all claims for costs on the part of the attorney of either, as against the other. Watson v. Depeyster, 1 Caines. 66; Johnston v. Brannan, 5 Johns. 268; People v. Hardenbergh, 8 Johns. 335; Chapman v. Haw, 1 Taunt. 341; Graves v. Eades, 5 Taunt. 429; Charlwood v. Berridge, 1 Esp. 345; Nelson v. Wilson, 6 Bing. 568. But, even courts of law will protect attorneys against settlements made collusively, with intent to destroy their remedies for costs. and even against those which are made after notice to pay costs to the attorney. Pinder v. Morris, 3 Caines, 165; Martin v. Hawks, 15 Johns, 405; Swain v. Senate, 2 Bos. & P. N. R. 99; Cole v. Bennett, 6 Price, 15. Slight circumstances are often regarded as competent proof of collusion—as that the party settled with has a good cause of action, and is irresponsible to satisfy his attorney's costs: or that there is an appearance of concealment in the settlement. In some instances, the English courts have regarded the mere retainer of an attorney, where no arrest of the party had yet been made, as legal notice to the opposite party that the demand could only be settled with the attorney or on a satisfaction of his costs. Toms v. Powell, 7 East, 536. There must necessarily be much technicality mingling with the judgment of courts of law in relation to costs as the concomitant of a suit. An attorney is, accordingly. not allowed to continue the suit, to recover his costs, after his client has discharged the action, unless fraud and collusion in the settlement render it nugatory.

Courts proceeding upon the principles of the civil law act upon broader doctrines. The charges a party sustains in contesting a suit are estimated with reference to all the equities brought to view. and are apportioned ad libitum by the courts. In chancery and in the ecclesiastical courts. costs are regarded as a distinct equity. though taking origin in and springing out of the general subject of controversy. The unsuccessful or litigious party. pro salute animae. may undergo the penalty of costs. in correction of a disposition considered to be too grasping or refractory. Those courts also regard the reality of rights

and interests more than their technical name and aspect. Costs are treated as the distinct and exclusive right of the proctor, although nominally granted to the party. This right will be vigorously supported by the courts, subject only to the general principles upon which costs are allowed or denied. The proctor's interests and those of his client are one in that respect only. When the right is settled, the interference of a party chargeable with costs, to dispossess the proctor of his remedy for them, would be grossly irregular. The court of admiralty proceeds upon analogous principles with other courts which take jurisdiction conformably to the rules of the civil law, and imposes or withholds costs, in respect to parties, according to their fair merits and equities in relation to the subject matter of the litigation. And, in regard to the incidental interests of proctors, it does not consider its power, in this behalf, controlled by any compromise between the parties which does not appear apud acta. The Thomas Handford, 2 Hagg. Adm. 41, note.

To determine, therefore, the disposition of costs as between the parties, the court must necessarily inform itself of their relative rights and liabilities, and examine the circumstances indicative of bona fides in the suitors, either in bringing the action or in defending it. The settlement now in question is marked by exceedingly suspicious traits. The suit had progressed almost to maturity. Large expenses were already incurred. The whole case of the libellant was known to the claimant. The libellant is a transient person, wholly irresponsible for the expenses, and it was accordingly manifest that they must not be lost to the proctor if they were not obtained from the claimant by an award of costs, or secured in the damages decreed against him and recovered by the libellant. The libellant is an illiterate black man, alleged by the claimant to be disorderly and reckless. He is no doubt the kind of person with whom the proffer of ready money would be likely to have quick influence. It is not to be expected his avidity would be restrained by any concern for the rights of his proctor, and he may, withal, have been ready to unite in a trick upon his lawyer, without great concern as to its honesty. Under such circumstances, the claimant negotiated a secret settlement with him, paid him $50 in cash, and took his release in full satisfaction of the cause of action. In this the claimant had the assistance of his own counsel, whilst the libellant acted without the presence of any legal adviser. This has the appearance of dealing separately with the libellant with intent to defeat a recovery of costs, and nothing would induce the court to uphold a transaction so managed, short of evidence that the libellant had but a questionable ground of action, or that the claimant would be enabled to present a meritorious defence, so that the court could pronounce the bargain a fair one for the libellant, and one which his proctor ought to have sanctioned, if consulted.

It is urged, accordingly, that the claimant furnishes at least prima facie evidence of a substantial defence on the merits. But the answer nowhere sets up a misconduct which could operate as a satisfaction of wages. It does not claim a forfeiture of them, and if, on a trial, it had been sustained throughout, it would only have exonerated the vessel from the libellant's claim for wages after his discharge at Rio Janeiro, but would in no way affect his right to a full recovery of wages up to that time. Wages were thus due the libellant for eight months, so that, after deducting the advances to him, a balance of $100 would have been left, against which the answer sets up no payment. To this must be added two-thirds of the advance which the master is bound by statute to make on discharging a seaman in a foreign port. It accordingly results, that upon the pleadings and proofs before the court, the libellant is entitled to recover a sum exceeding $100, without regarding his claim for wages subsequent to the time he left the vessel. It is manifest, therefore, that the settlement was highly advantageous to the claimant, even if he is compelled to pay the costs of suit in addition to the compromise money. If he is released from paying costs, he makes a large saving, and has, in effect, succeeded in perpetrating a fraud on the libellant or his proctor.

It can hardly be supposed that, had the terms of compromise been referred to the court, it would have sanctioned a settlement, in view of the pleadings and proofs before it, without also imposing costs. The equity with respect to costs, then, remains unaffected by the arrangement pleaded as a satisfaction and release. Conceding that a suitor has, in this court, equally as at law, an abstract right to discharge from the lien for costs the thing or proceeds held under arrest, a proceeding like this, behind the back of the proctor, and operating to deprive him of his rights, could hardly be upheld in any tribunal.

As the libellant does not invoke the court to relieve him from the bargain, as being unequal in respect to his rights, it will not be interfered with further than to declare that the settlement is no bar to the proctor's remedy for costs. But, as the proctor has unnecessarily made costs, by replying to the supplemental answer and noticing the cause upon the issue thus framed, the taxable costs arising from those proceedings must be allowed to the claimant as a set-off. Decree accordingly.